IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DAVID ADAMS                                                                                           PLAINTIFF

vs.                                            Civil No. 6:16-cv-06109

NANCY A. BERRYHILL                                                                                DEFENDANT
Acting Commissioner, Social Security Administration

**MEMORANDUM OPINION**

David Wayne Adams ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2010), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for Supplemental Security Income ("SSI"), Disability Insurance Benefits ("DIB"), and a period of disability under Titles II and XVI of the Act.

The Parties have consented to the jurisdiction of a Magistrate Judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. ECF No. 7.[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1.    Background:**

Plaintiff protectively filed his disability applications on September 6, 2013. (Tr. 11, 177-187). Plaintiff alleges being disabled due to chronic reoccurring left ankle injury, bipolar disorder, post-traumatic stress disorder ("PTSD"), and anxiety disorder with panic attacks. (Tr. 17, 38-56, 118, 121, 177-187, 210). Plaintiff alleges an amended onset date of September 1, 2013. (Tr. 11, 37).

---

[1] The docket numbers for this case are referenced by the designation "ECF No. ___." The transcript pages for this case are referenced by the designation "Tr."

1

These applications were denied initially and again upon reconsideration. (Tr. 68-117).

Thereafter, Plaintiff requested an administrative hearing on his denied applications. The administrative law judge ("ALJ") granted that request and held an administrative video hearing on August 28, 2014. (Tr. 33-77). The ALJ presided over the hearing from Little Rock, Arkansas, and the Plaintiff testified in Hot Springs, Arkansas. *Id.* At the hearing, Plaintiff was present and was represented by John Miller. *Id.* Vocational Expert ("VE") Kola L. Brown also testified at this hearing. *Id.*

At this hearing, Plaintiff testified he was forty-two (42) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (DIB) and 20 C.F.R. § 416.963(c) (SSI). (Tr. 36). As for his level of education, Plaintiff testified he completed high school and attended 20 weeks of training to obtain a small engine repair certification. (Tr. 36-37).

After this hearing, on August 14, 2015, the ALJ entered an unfavorable decision denying Plaintiff's applications for SSI and DIB. (Tr. 11-27). In this decision, the ALJ found Plaintiff met the insured status requirements of the Act through December 31, 2018. (Tr. 13, Finding 1). The ALJ found Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since September 1, 2013, his amended alleged onset date. (Tr. 13, Finding 2). The ALJ determined Plaintiff had the following severe impairments: joint disorder of the ankle, bipolar disorder, and PTSD. (Tr. 13, Finding 3). Despite being severe, the ALJ determined these impairments did not meet or medically equal the requirements of any of the Listings of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 14-16, Finding 4).

The ALJ then considered Plaintiff's Residual Functional Capacity ("RFC"). (Tr. 16-25, Finding 5). First, the ALJ evaluated Plaintiff's subjective complaints and found his claimed

limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained the RFC to perform the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can lift and carry up to 10 pounds occasionally, sit a total of six hours in an eight-hour workday and stand/walk a total of two hours in an eight-hour workday. The claimant is limited to occasionally stooping, crouching, bending, kneeling, crawling, and balancing. The claimant requires a cane for ambulation but could use the free hand to carry small objects. The claimant would also be limited in the lower left extremity to only occasional use of foot controls. In addition to the above, the work must be unskilled, defined as work which is simple, routine and repetitive with supervision that is simple, direct, and concrete with frequent contact with coworkers and supervisors, but only occasional contact with the general public.

*Id.*

The ALJ then evaluated Plaintiff's Past Relevant Work ("PRW") and found Plaintiff is unable to perform his PRW. (Tr. 26, Finding 6). The ALJ also considered whether Plaintiff retained the capacity to perform other work existing in significant numbers in the national economy. (Tr. 26-27, Finding 10). The VE testified at the administrative hearing regarding this issue. *Id.* Based upon that testimony, the ALJ determined Plaintiff retained the capacity to perform the following: (1) table worker (sedentary, unskilled) with 404,068 such jobs in the United States and 53,222 such jobs in Arkansas; (2) lampshade assembler (sedentary, unskilled) with 192,491 such jobs in the United States and 2,376 such jobs in Arkansas. *Id.* The VE also answered vocational interrogatories proffered post-hearing and responded that both of these jobs would still be compatible for an individual that required a cane for ambulation, could use the free hand to carry small objects, and the individual would be limited in the lower left extremity to the occasional use of foot controls. (Tr. 267). Because Plaintiff retained the capacity to perform this work, the ALJ also determined Plaintiff had not been under a disability, as defined by the Act, from April 15, 2013 through the date of his

3

decision. (Tr. 27, Finding 11).

Thereafter, Plaintiff requested a review by the Appeals Council. (Tr. 7). On August 26, 2016, the Appeals Council denied this request. (Tr. 1-6). On October 26, 2016, Plaintiff filed the present appeal with this Court. ECF No. 1. The Parties consented to the jurisdiction of this Court on November 8, 2016. ECF No. 7. Both Parties have filed appeal briefs. ECF Nos. 12, 15. This case is now ripe for determination.

2.  **Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2010); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one

4

year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Cox,* 160 F.3d at 1206; 20 C.F.R. §§ 404.1520(a)-(f). The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached. *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

3. **Discussion:**

In his appeal brief, Plaintiff claims the following: (A) the ALJ improperly discounted the

5

opinions of Dr. Sarah Sullivan, M.D., Ph.D. and Dr. Ted Honghiran, M.D., F.A.C.S. in assessing Plaintiff's RFC, and (B) the ALJ improperly evaluated the credibility of Plaintiff's subjective complaints. ECF No. 12 at 1-13. Upon review, the Court agrees the ALJ improperly discounted the opinions of Drs. Sullivan and Honghiran. The Court expresses no opinion on whether the ALJ should revisit his findings with regard to Plaintiff's credibility.

While the Court finds substantial evidence to support the ALJ's determination regarding Plaintiff's mental impairments and his mental RFC, after reviewing the entire record, the Court cannot say the same about Plaintiff's physical impairments. Plaintiff contends the ALJ improperly discounted the opinion provided by his treating primary care physician, Dr. Sullivan, and failed to apply the factors in 20 C.F.R. §§ 404.1527, 416.927[2] in assessing Dr. Sullivan's opinion. ECF No. 12 at 7-9. On January 7, 2014, Dr. Sullivan, provided a physical Medical Source Statement with these assessments:

> Dr. Sullivan found Plaintiff could occasionally lift and/or carry less than 10 pounds, and frequently lift and/or carry less than 10 pounds. Plaintiff could stand less than two hours in an eight-hour workday. Dr. Sullivan found Plaintiff could sit less than six hours in an eight-hour workday. Plaintiff's pushing and/or pulling abilities were limited in the lower extremities. In addition, Plaintiff could never perform any postural activities, but he had unlimited manipulative functions. Plaintiff also had no visual, communicative, and environmental limitations.

(Tr. 628-632).

It is acknowledged that a conclusory checkbox form has little evidentiary value when it "cites no medical evidence, and provides little to no elaboration." *Anderson v. Astrue*, 696 F.3d 790, 794

---

[2] Plaintiff's brief cites to only 20 C.F.R. § 404.1527, but because he filed Titles II and XVI applications, 20 C.F.R. § 416.927 will also be evaluated.

(8th Cir. 2012) (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)). Although Dr. Sullivan's opinion was made on a checkbox form, she provided an explanation for the exertional limitations she found. Dr. Sullivan cited to Plaintiff's damaged knees and ankle, chronic ankle and knee pain, severe damage to both, and he is unable to hold down or keep a job. (Tr. 630).

Furthermore, Dr. Sullivan's own treatment history and the medical evidence in the record as a whole supported Dr. Sullivan's opinion. Plaintiff has a history of left ankle joint disorder with chronic pain due to a military injury that occurred when he stepped into a foxhole in 1994 and suffered a lateral instability dislocation. (Tr. 17, 288). Plaintiff received a medical discharge due to his ankle injury, and underwent two previous Brostrom ligament reconstructive surgeries prior to the alleged onset date. (Tr. 17, 422). In the year prior to the alleged onset date, Plaintiff complained of repeatedly twisting his left ankle. (Tr. 470-471). Plaintiff requested an orthopedic consultation, and Dr. Sullivan made the referral on his behalf. *Id*. On October 23, 2012, it was reported to Dr. Sullivan that the orthopedic surgeon wanted to fuse Plaintiff's left ankle, but Plaintiff wanted to wait on having surgery. (Tr. 459).

On April 22, 2013, Plaintiff reported spraining his left ankle again and was using crutches. (Tr. 444). Plaintiff expressed his desire to have the fusion, and Dr. Sullivan referred him for an orthopedic consultation. (Tr. 444-446). On June 20, 2013, Dr. Ruth L. Thomas, an orthopedic surgeon, noted that left ankle X-rays showed mild spurring, no significant joint deformity, left ankle opens with stress, and possible loose bodies. (Tr. 404-408, 422). Dr. Thomas recommended surgical intervention. (Tr. 422).

After the alleged onset date of September 1, 2013, Dr. Thomas noted a recent left ankle MRI

7

study administered on December 12, 2013 which showed ligament laxity and degenerative joint disease. (Tr. 491-493, 560). On February 11, 2014, Dr. Thomas performed a left ankle Brostrom with internal splint, and left ankle arthroscopy with drilling and curettage of two osteochondritis ("OCD") dissecans lesions. (Tr. 546, 614). On March 27, 2014, a left ankle X-ray showed interval post-surgical changes in the left ankle, mild diffuse soft tissue swelling, small round subchondral lucency in the lateral talar dome, and mild spurring of the ankle and hindfoot. (Tr. 638). Dr. Sullivan referred Plaintiff for a specialty wheelchair and cushion to assist with ambulation. (668-670).

On May 8, 2014, Plaintiff reported during a post-surgical visit three months later that he was consistently wearing the boot and still walked with a cane in the opposite hand. (Tr. 661-663). The plan was for Plaintiff to transition out of the boot, into a splint, and then eventually to regular shoe wear. (Tr. 662-663). He was to attend two to three physical therapy sessions to learn exercises to perform at home. *Id*. Plaintiff also expressed his desire to avoid having an ankle fusion. *Id.* On June 30, 2014, Plaintiff complained that he twisted his left ankle while mopping, and a left ankle X-ray showed apparent post-operative residual drill holes in the calcaneus and no acute fracture. (Tr. 637, 645-646).

On August 7, 2014, Plaintiff arrived to a follow-up visit with Dr. Thomas wearing the left ankle boot. (Tr. 709-710). Plaintiff reported physical therapy was a complete failure, and he was still turning his left ankle even though he has an internal splint. (Tr. 709). Dr. Thomas wrote that based on an X-ray, the internal splint was working, but Plaintiff still had the sensation of instability. (Tr. 679, 709). Upon exam, Dr. Thomas could not demonstrate anterior drawer or talar tilt, and when Plaintiff stood, observation from behind showed there might be very mild varus of each heel.

8

(Tr. 709). Dr. Thomas opined it was unlikely all of Plaintiff's pain issues will resolve in his left ankle, but mechanical stability was present. (Tr. 709-710). Dr. Thomas found no further intervention was necessary by orthopedics. *Id.* Plaintiff was referred back to Dr. Sullivan, and he was to use the ankle brace as needed. *Id*. Plaintiff was prescribed Oxycodone and Hydrocodone for his pain. (Tr. 720, 730).

The ALJ cited radiographic imaging and physical exams failed to demonstrate significant ankle dysfunction in support of his decision to discount Dr. Sullivan's opinion. (Tr. 22). However, Dr. Sullivan along with orthopedic surgeon, Dr. Thomas, found the objective evidence was substantial enough to warrant surgical intervention during the relevant time period. Dr. Sullivan even found Plaintiff needed a custom wheelchair as an assistive device post-surgery. Unfortunately, Plaintiff has continuing pain and instability in his left ankle after the surgery despite physical therapy and pain management. The record reflects there was discussion of a left ankle fusion, and although Plaintiff wanted to avoid another surgery, he testified at the hearing it was a possibility. (Tr. 40). In light of the medical evidence detailing Plaintiff's left ankle problems, this Court cannot agree with the ALJ's evaluation of Dr. Sullivan's opinion because it was supported by more than just Plaintiff's subjective complaints.

Additionally, there is insufficient evidence that the ALJ applied the factors contained in §§ 404.1527, 416.927 when he assigned little weight to Dr. Sullivan's assessment. As his treating physician, Dr. Sullivan had a long-term and extensive relationship with the Plaintiff. The ALJ mischaracterized Dr. Sullivan's opinion when the ALJ determined the assessment intrudes upon the ultimate issue of disability reserved to the Commissioner. (Tr. 22). Dr. Sullivan simply drew upon her treatment history with the Plaintiff to formulate a physical RFC. The ALJ must give good

reasons for whatever weight he gives the treating physicians opinion. *Holstrom v. Massanari*, 270 F.3d 715, 720 (8th Cir. 2001). Insufficient reasons were provided by the ALJ, and therefore this matter must be reversed and remanded for further proceedings.

Plaintiff also argues the ALJ improperly discounted the consultative opinion provided by Dr. Honghiran and failed to apply the factors outlined in §§ 404.1527, 416.927, and this Court agrees with Plaintiff's contention. ECF No. 12 at 9-11. On May 15, 2015, in a post-hearing consultative examination ordered by the ALJ, Dr. Honghiran, an orthopedic surgeon, observed Plaintiff walked with a severe limp in his left leg, and used a cane to walk all of the time. (Tr. 720-721). Plaintiff was unable to walk without the cane or walk on tiptoes and heels. (Tr. 721). He was able to dress and undress himself and get on and off the examination table with no problems. *Id*. Upon exam, there was evidence of laxity of the lateral ligament of the left ankle. *Id*.

Dr. Honghiran found Plaintiff had residual deformity of the ankle with the ankle being in the inversion position all of the time. *Id*. Plaintiff had pain on range of motion, and his range was limited to 30 degrees of flexion only. *Id*. An X-ray of the left ankle showed evidence that the ankle joint still had good joint space left with obvious arthritis in the left ankle joint. Dr. Honghiran ultimately diagnosed Plaintiff with a history of a torn ligament of the left ankle and a chronically unstable ankle joint which caused him to fall on several occasions. *Id*. Dr. Honghiran indicated Plaintiff had multiple surgeries done with no success, and he was faced with the possibility of a fusion in the future. *Id*. Dr. Honghiran assessed Plaintiff was willing to try the ankle brace, but he has to use a cane all the time, and it would be very difficult for him to get a job on that basis. *Id*.

Dr. Honghiran also provided a physical Medical Source Statement checkbox form with the

following assessments:

> Plaintiff could occasionally lift and/or carry 21-50 pounds and frequently lift and/or carry 11-20 pounds. Plaintiff could sit for two hours, stand for 30 minutes, and walk for 30 minutes at one time without interruption. Plaintiff could sit for a total of four hours, stand for a total of two hours, and walk for a total of two hours in an eight-hour workday. Plaintiff required the use of a cane to ambulate, the cane was medically necessary, and with the cane he could use his free had to carry small objects. Plaintiff could occasionally push/pull bilaterally and frequently reach in all directions, handle, finger, and feel bilaterally. Plaintiff could frequently operate foot controls with his right foot and occasionally operate foot controls with his left foot. Plaintiff could never climb stairs, ramps, ladders, or scaffolds. Plaintiff could occasionally balance and frequently stoop, kneel, crouch, and crawl. Plaintiff could never tolerate unprotected heights or moving mechanical parts, and he could occasionally operate a motor vehicle. Plaintiff could frequently tolerate exposure to humidity and wetness; dust, odors, fumes and pulmonary irritants; extreme cold and heat; and vibrations. Plaintiff could tolerate loud noise such as heavy traffic. Plaintiff could shop; travel without a companion for assistance; ambulate without using a wheelchair, walker, two canes, or two crutches; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; prepare a simple meal and feed himself; care for his personal hygiene; and sort, handle, or use paper or files. Dr. Honghiran noted the limitations he assessed Plaintiff to have were first present two years ago, and the limitations lasted or will last for 12 consecutive months. An attached range of motion chart also showed Plaintiff's left ankle dorsiflexion was eight degrees and plantar-flexion was 30 degrees.

(Tr. 722-728).

The ALJ gave Dr. Honghiran's opinion some weight to the extent it was consistent with a sedentary exertional level, but the remaining limitations were accorded little weight with the reasoning that some of Dr. Honghiran's opinion was inconsistent with the evidence of record. (Tr. 23). We find, however, Dr. Honghiran's opinion was supported by the record and his examination of the Plaintiff. Based on the evidence, Plaintiff clearly has residual instability within his left ankle that limits his ability to work. Several factors such as Dr. Honghiran's specialized knowledge as an

11

orthopedic surgeon, his personal examination of the Plaintiff, and the evidence of record supporting his limitations also lends weight to Dr. Honghiran's assessment.

The ALJ was seeking further insight regarding Plaintiff's physical limitations when he ordered Dr. Honghiran's consultative examination after the hearing. In fact, during the administrative hearing, the ALJ requested Plaintiff obtain a medical source statement from his treating orthopedic surgeon, Dr. Thomas, because of her extensive knowledge in the field. (Tr. 64-66). The ALJ specifically wanted Dr. Thomas's assessment to be in a narrative format rather than a checkbox form because it would provide more information as to Plaintiff's condition. *Id*. Unfortunately, Plaintiff was unable to procure a detailed medical source statement from Dr. Thomas on his own. (Tr. 263). The only opinion Dr. Thomas provided in the record was that she thought it was unlikely all of Plaintiff's pain issues will resolve in his left ankle. (Tr. 709-710).

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. *See* 20 C.F.R. §§ 404.1512, 416.912. In his decision, the ALJ discounted the only treating and examining physical RFC assessments in the record, and the non-examining assessments provided by state agency medical consultants did not support the ALJ's RFC determination. Because the evidence does not make clear Plaintiff can perform the duties of sedentary work with additional limitations, we find remand is necessary to allow the ALJ to consider this further.

On remand, the ALJ is directed to reconsider Dr. Sullivan's treating source opinion, as well as Dr. Honghiran's consultative opinion with respect to Plaintiff's exertional, postural, and

12

manipulative limitations. The ALJ is also instructed to contact Dr. Thomas, Plaintiff's treating orthopedic surgeon, to seek a detailed assessment in narrative format. The assessment should specifically address how long Plaintiff can stand, walk, and sit during an eight-hour workday; what limitations use of a cane for ambulation could impose; and what other exertional, postural, and manipulative limitations Plaintiff might have due to his left ankle impairment. Dr. Thomas's assessment should also provide insight as to whether she recommends a left ankle fusion, and what results could be expected. With this additional medical opinion evidence, the ALJ should then reconsider Plaintiff's RFC.

**4.    Conclusion:**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is not supported by substantial evidence and should be reversed and remanded. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this    26th    day of February 2018.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE